UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE L. NIEVES,<br><br>**Plaintiff,**<br><br>v.<br><br>CORRECTIONAL FACILITY ESSEX COUNTY, et al.,<br><br>**Defendants.** | Civil Action No. 15-5538 (SDW)<br><br>OPINION |

**WIGENTON**, District Judge:

This matter comes before the Court on the motion for summary judgment filed in this matter by Defendants Flauhardy[1] and Jackson.[2] (ECF No. 47). Plaintiff, who is proceeding *pro se* in this matter, did not file a response to the motion. (ECF Docket Sheet). For the following reasons, Defendants motion is granted in part and denied in part.

**I. BACKGROUND**

Plaintiff's complaint in this matter is chiefly concerned with an assault he suffered at the hands of another inmate, Anwan Latham, on April 6, 2014, which Plaintiff contends arose out of instigation by Defendant Flauhardy, a correctional officer at the jail in which Plaintiff was then housed. When he was interviewed by Essex County Correctional Facility investigators regarding

---

[1] Defendant Flauhardy's name is spelled various ways throughout the record of this matter. In this opinion, this Court uses Flauhardy, the spelling contained in Defendants' summary judgment motion papers.

[2] The two remaining Defendants, Nurse Supervisor Gwen and Nurse Maria, are apparently not employees of the jail and Defendants did not accept service on their behalf. (*See* Document 1 attached to ECF No. 47 at 5). As they appear not to have been served in this matter, they are not part of this motion.

1

this incident in July 2014, Plaintiff provided the following version of those events and the background that led to them.[3]

> [Plaintiff] has been incarcerated at the Essex County Jail since January[] 2013. He has been assigned to the infirmary because he is a paraplegic, is wheelchair bound, and uses a catheter. [Plaintiff] stated that he has never had a problem with inmates or officers until the end of 2013. [Plaintiff] stated that officer [Flauhardy] told several inmates that he is incarcerated for molesting children. [Plaintiff] stated that he has never been arrested for any type of sexual charges, especially sexual charges involving children.
>
> [When asked what was said to these other inmates, Plaintff] stated that officer [Flauhardy] stated to the inmates "[Plaintiff] likes to play Santa Claus and have children sit on his lap." [When asked if [Flauhardy] said anything else about sex with children, Plaintiff] stated "no." [Plaintiff] further stated that officer [Flauhardy] never said anything directly to him regarding child molestation. [Plaintiff] stated that officer [Flauhardy] was moved from the infirmary in January[] 2014.
>
> [When asked about the assault, Plaintiff] stated that he and inmate Latham were assigned to the infirmary together and did not

---

[3] It does not appear that Defendants ever attempted to depose Plaintiff in this matter, a fact which renders Defendants' assertion that Plaintiff has failed to provide any evidence to support his claims suspect. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J., concurring, plaintiff "need not . . . depose his witnesses or obtain their affidavits to defeat a summary judgment motion asserting only that he failed to produce any support for his case[; i]t is the defendant's task to negate, if he can, the claimed basis for the suit"). Because Plaintiff was apparently not deposed, the only documentary evidence setting forth Plaintiff's version of events other than his pleadings is contained in the statements he gave to the jail's investigators.

The Court further notes that Defendants' motion presents two arguments that should properly have been raised in a motion to dismiss rather than at this late stage as summary judgment arguments. Specifically, the argument that the claim against Jackson must fail as Plaintiff's amended complaint fails to state a cognizable claim against him, and the assertion that any equal protection claim – a claim this Court does not construe Plaintiff to be making in his amended complaint – must fail for lack of a similarly situated prisoner, should have been raised earlier in the litigation. Because Plaintiff does fail to allege a cognizable claim against Jackson specifically, and because Plaintiff failed to respond to the summary judgment motion and provide any evidence or further statement of his claim that would support a cognizable claim, this Court will consider Jackson's argument as detailed herein. This Court condones neither Defendants' apparent failure to depose Plaintiff nor the tardy raising of what are essentially failure to state a claim arguments that should have been raised in a motion to dismiss.

> have any problems. Inmate Latham was re-assigned to a different unit. Inmate Latham was re-assigned back to the infirmary and back on the same unit with [Plaintiff]. Inmate Latham stated to him, "I heard you like being Santa Claus and having kids sit on your lap." [Plaintiff] and Latham began arguing and a physical altercation occurred inside cell 200. After the fight ended, Inmate Latham walked out of cell 200. [Plaintiff] did not immediately tell any custody staff of the incident. He was later questioned by a Sergeant regarding this incident. [Plaintiff] stated that he fell from his wheelchair while reaching for something and hurt his eye.
>
> [When asked why he didn't tell the Sergeant he had been assaulted, Plaintiff] stated "I did not want to get Inmate Latham in any trouble." [Plaintiff further declined to press charges against Latham.] [When asked if he had] ever heard officer [Flauhardy] state anything to him or any other inmate regarding his charges or child molestation, [Plaintiff] stated "no."

(Document 2 attached to ECF No. 47 at 21-22). Because the record only contains the statement Plaintiff gave to the investigator and that report is written in a way that does not make plain what exactly Plaintiff said, it is not clear if Plaintiff denied ever having overheard Flauhardy make the Santa Claus comment but never heard any other allegations of molestation, or whether Plaintiff denied having even heard that comment. In the notice of claim form he submitted to the jail, however, Plaintiff stated that Latham indicated that Flauhardy had told him the Santa Claus statement. (*Id.* at 14). As a result of the alleged assault by Latham, Plaintiff received two black eyes and was unable to open one of his eyes for at least a day afterwards. (*Id.* at 12).

When Latham was interviewed, he admitted that the fight started after he told Plaintiff he had "heard some shit about [Plaintiff]", which led to a physical confrontation. (*Id.* at 23). Latham did not detail what information he heard to the investigator. (*Id.*). Latham's disciplinary records indicate that he has had frequent administrative charges, several of which involved his being verbally abusive or engaging in fights with other inmates. (*Id.* at 30-48). While Officer Flauhardy denied ever making any statement about Plaintiff's charges to Latham, including the Santa Claus

3

comment, he did acknowledge that he and Plaintiff had a somewhat antagonistic relationship, which he characterized as being the result of verbal abuse Plaintiff hurled at him following an altercation between Flauhardy and another inmate. (*Id.* at 24).

In his second claim, which is directed towards all Defendants other than Flauhardy, Plaintiff contends that he was denied adequate medical treatment when, on at least one occasion, Officer Jackson and two members of the medical staff, non-moving Defendants Nurse Supervisor Gwen and Nurse Maria, denied him access to fresh urinary catheters. (*Id.* at 7-8). Although Petitioner alleges that medical staff denied him catheters on multiple occasions leading to urinary tract infections and other pain and suffering, Plaintiff identifies only one instance in which Defendant Jackson was involved – an incident which occurred on August 27, 2014. (*Id.* at 7). According to Plaintiff, "at approximately 5 pm [he] asked C.O. Jackson to open his cell door because he needed to get a urine catheter from his cell and use the toilet," a request Jackson apparently denied. (*Id.*). Presumably, this caused Plaintiff some discomfort. Although medical records within the record confirm both that Plaintiff uses catheters and that he on at least one occasion contracted an infection, (*see id.* at 12-13), there is nothing in the record indicating what, if any, harm befell Plaintiff because of Jackson's refusal to let Plaintiff into his cell on August 27, 2014.

## II. DISCUSSION

### A. Legal Standard

Pursuant to Rule 56, a court should grant a motion for summary judgment where the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of "identifying those portions of the pleadings depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. A factual dispute is material "if it bears on an essential element of the plaintiff's claim," and is genuine if "a reasonable jury could find in favor of the non-moving party." *Blunt v. Lower Merion School Dist.*, 767 F.3d 247, 265 (3d Cir. 2014). In deciding a motion for summary judgment a district court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion," *Id.*, but must not make credibility determinations or engage in any weighing of the evidence. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, [however,] there is no genuine issue for trial." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the moving party has met this initial burden, the burden shifts to the non-moving party who must provide evidence sufficient to establish that a reasonable jury could find in the non-moving party's favor to warrant the denial of a summary judgment motion. *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 65 (3d Cir. 1996); *Serodio v. Rutgers*, 27 F. Supp. 3d 546, 550 (D.N.J. 2014). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. However, the party opposing the motion for summary judgment cannot rest on mere allegations, instead it must present actual evidence that creates a genuine issue as to a material fact for trial." *Serodio*, 27 F. Supp. 3d at 550.

Pursuant to Federal Rule of Civil Procedure 56(e)(2) and Local Civil Rule 56.1, where, as here, the moving party files a proper statement of material facts and the non-moving party fails to file a responsive statement of disputed material facts, this Court is free to consider the moving party's statement of material facts undisputed and therefore admitted for the purposes of resolving

5

the motion for summary judgment. *See, e.g., Ruth v. Sel. Ins. Co.*, No. 15-2616, 2017 WL 592146, at *2-3 (D.N.J. Feb. 14, 2017). Even where the defendants' statement of material facts is deemed admitted and unopposed, a district court is still required to "satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and that [Defendants are] entitled to judgment as a matter of law" in order to grant summary judgment. *Id.* At 2 (citing *Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990)).

**B. Analysis**

Defendants argue that they are entitled to summary judgment on Plaintiff's § 1983 claims. First, Defendant Flauhardy argues that he is entitled to judgment as a matter of law on Plaintiff's protection claim because a) Flauhardy was not assigned to the infirmary when Plaintiff was attacked, b) Latham had a history of violence notwithstanding any pedophilia related statement by Flauhardy, and c) Plaintiff made statements to investigators which could be interpreted to state that he never heard Flauhardy tell other prisoners that he was a child molester. These arguments are largely based on a misconstrual of Plaintiff's claims and an attempt by Defendant Flauhardy to avoid liability by not giving Plaintiff a real opportunity to place his version of events on the record, and are in any event undermined by the statements Plaintiff made to jail investigators. Plaintiff's claim against Defendant Flauhardy is essentially a species of a failure to protect claim. Such a claim has three elements – that the plaintiff "was incarcerated under conditions posing a substantial risk of serious harm, . . . the [defendant] was deliberately indifferent to that risk to his health and safety, and . . . the [defendant]'s deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir.2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). A prison official acts with deliberate indifference where he knows of and disregards a substantial risk

of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837. It is immaterial "whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk." *Id.* at 843.

Here, Plaintiff stated to prison investigators that Latham told him that Flauhardy had told Latham that Plaintiff was a child molester insomuch as he liked to "play Santa Claus" by placing children on his lap, and that it was this statement by Flauhardy that led to Latham's attack against him. Latham likewise told investigators that the altercation between he and Plaintiff occurred after he told Plaintiff that he had heard some rumors about him, which, viewing the available facts in the light most favorable to Plaintiff and drawing reasonable inferences in Plaintiff's favor, supports rather than hinders Plaintiff's assertion that the attack grew out of the pedophilia statement by Flauhardy. Given the widely held knowledge that being classified as a sex offender puts prisoners at severe risk of being attacked or abused by other inmates which the Third Circuit recognized in *Renchenski v. Williams*, 622 F.3d 315, 326 (3d Cir. 2010), it is clear that the statement at issue here, that Plaintiff was essentially a child molester, was more than sufficient to create a substantial risk of harm to Plaintiff, especially where that statement is made to a prisoner known to be violent with other inmates. If a jury found these statements credible, such a jury could reasonably conclude that Flauhardy created a substantial risk of harm by telling Latham that Plaintiff liked to abuse children, that he thereafter ignored that risk by not taking action to protect Plaintiff from Latham, and that Plaintiff was beaten by Latham in an incident related to that alleged rumor is indicative of harm to Plaintiff. Thus, granting Plaintiff the benefit of all reasonable inferences as this Court must, the available record is more than sufficient to survive summary judgment on Plaintiff's failure to protect claim against Officer Flauhardy. Flauhardy's reassignment, which would be applicable to a claim that Flauhardy failed to intervene in an ongoing fight, is not relevant

7

here because, according to Plaintiff, Flauhardy created the risk with his own actions and set it loose upon Plaintiff without taking any action to prevent an attack by Latham. Likewise, that Flauhardy denies having made the statement to Latham at best creates a dispute of material fact that must be resolved at trial by a fact-finding jury. *Anderson*, 477 U.S. at 255. Summary judgment is therefore denied.

Defendant Jackson also moves for summary judgment on Plaintiff's catheter related medical claim. As Plaintiff was a pretrial detainee during the time when he was in the Essex County Jail, his medical claim arises out of the Fourteenth Amendment. *King v. Cnty. of Gloucester*, 302 F. App'x 92, 96 (3d Cir. 2008). Because the Fourteenth Amendment provides protections to pre-trial detainees at least as strong as those afforded convicted prisoners under the Eighth Amendment, such claims are generally evaluated under the standard for Eighth Amendment claims. *Id.*; *see also Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017). Such a claim requires the Plaintiff to show that the defendants were deliberately indifferent to a serious medical need. *Parkell*, 682 F. App'x at 159. A defendant acts with deliberate indifference where he "knows of and disregards an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This requires that the defendant was "both [] aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and . . . dr[e]w th[at] inference." *Id.* At summary judgment, a Plaintiff must "point to some evidence beyond [their] raw claim" to establish deliberate indifference. In the medical context, this requires a showing of "objective evidence that [a] plaintiff had serious need for medical care, and prison officials ignored that evidence [or] . . . necessary medical treatment is delayed for non-medical reasons." *Id.*

As to Defendant Jackson, Plaintiff has pled only that Jackson refused him entrance to his cell on one occasion during which he needed to get urinary catheters and use the toilet. While the jail's medical staff certainly would have known of Plaintiff's need for medical catheters, and the risks that would accompany failing to change those catheters on a regular basis, nothing Plaintiff has pled or otherwise shown indicates that Jackson knew that refusing to open Plaintiff's cell door presented "an excessive risk to inmate health or safety." *Natale*, 318 F.3d at 582. Plaintiff has not pled facts showing that Jackson knew that Plaintiff had been allegedly denied catheters by medical staff, nor that he knew that Plaintiff was at considerable risk of harm from refusing to open a cell door on one occasion. Thus, even taking Plaintiff's allegations as if they were statements made in a deposition or certification to the Court, Jackson would be entitled to judgment as a matter of law. Defendants' motion shall be granted as to Defendant Jackson.

### III. CONCLUSION

For the reasons stated above, this Court GRANTS Defendants' motion for summary judgment (ECF No. 47) in part as to Defendant Jackson but DENIES the motion in part as to Defendant Flauhardy. An appropriate order follows.

Dated: October 16, 2019                     *s/ Susan D. Wigenton*
                                                              Hon. Susan D. Wigenton,
                                                              United States District Judge